Filed 12/21/20  Tesoro Logistics GP v. Elder CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TESORO LOGISTICS GP, LLC,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>THOMAS G. ELDER,<br><br>    Defendant and Appellant. | G058110<br><br>(Super. Ct. No. 30-2019-01067372)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Corey S. Cramin, Judge.  Affirmed.

Thomas G. Elder, in pro. per., for Defendant and Appellant.

Seyfarth Shaw, William Dritsas, Kiran A. Seldon, and Fontaine Yuk for Plaintiff and Respondent.

*          *          *

Tesoro Logistics ("Tesoro") sought a restraining order against Thomas Elder on behalf of two of its employees. After an evidentiary hearing, the trial court issued a permanent restraining order pursuant to Code of Civil Procedure section 527.8[1] prohibiting Elder from initiating any contact with the employees. Elder appeals, arguing there was insufficient evidence to warrant issuance of the restraining order as to either employee. We disagree and affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

After granting Tesoro's ex parte request for a temporary restraining order, the court held an evidentiary hearing regarding Tesoro's request for a permanent restraining order against Elder. The following evidence was introduced at that hearing.

Tesoro is a fuel transportation company which had a contract with Elder. In August 2018, Tesoro investigated an incident in which a sex toy was discovered in the trailer of one of its employees. Miranda S. (M.S.), an employee in Tesoro's human resources department, telephoned Elder to discuss the incident. During the phone call, Elder "became extremely agitated and uncontrollably upset." He screamed at M.S. so loudly that people working on the floor below her could hear him. Over the next two months Elder repeatedly contacted M.S. and demanded information about the investigation. M.S. eventually asked him to stop contacting her, but he continued until she "blocked his calls and texts."

In December 2018, Tesoro terminated its contract with Elder. The following month, Elder called Tesoro and asked to speak to a manager. Daniel B. (D.B.) was the manager on duty who spoke to Elder. Elder requested that his contract be reinstated. When D.B. said he did not have authority to assist with this request, Elder became "immediately hostile and started cursing"; D.B. hung up. Elder called back and left two voice messages which were "extremely hostile, aggressive and threatening." In

---

[1] All further statutory references are to this code.

the first message, Elder called D.B. a "piece of fuckin['] shit," and a "scared ass fuck," and said he hoped D.B.'s "job[']s on the fuckin['] line."  In the second message, Elder called D.B. a "fuckin['] fag ass bitch" and a "little bitch."  He ended the message by saying he would get the sex toy which was the subject of M.S.'s investigation and "shove it up [M.S.'s] ass and then . . . shove [it] up [D.B.'s] fuckin['] cunt . . . and then bring it home and shove it up [D.B.'s] wife's ass . . . ."

Elder admitted making the calls to D.B.   He said he did not think there were "any threatening parts."  He said he "basically told [D.B.] to 'F himself' for not helping me out."

In February 2019, Elder e-mailed M.S. a Facebook link with the subject line "They obviously don't work for you.  These people have a sense of humor.  Something you will never have."  Our record does not identify the link further.  Two months later, Elder sent M.S. this text message:  "No matter how great your day is going . . [.]  [¶]  Always remember someone is reading the Obituary column everyday waiting for your name to show up . . .  [¶]  #WaitingForYourName . . [.]  [¶] #WaitingForYourDeathCertificateToBeStamped . . . ."  Elder admitted sending the text message to M.S.  He described it as "just [his] thoughts at the time" and not a threat.  M.S. and D.B. both said they were in fear for their safety and the safety of their coworkers.

The court issued a Workplace Violence Restraining Order After Hearing which prohibited Elder from contacting M.S. and D.B for three years.  Elder appealed.

## DISCUSSION

Elder argues his contacts with M.S. and D.B. were not sufficient to support a restraining order and he did not make any threats which would cause a reasonable person to fear for his or her safety.  We review "an injunction issued under section 527.8 to determine whether the necessary factual findings are supported by substantial

3

evidence." (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538.) We find substantial evidence to support the issuance of the permanent restraining order here.

Code of Civil Procedure section 527.8 permits an employer to seek both temporary and permanent restraining orders against an individual on behalf of an employee. (§ 527.8, subd. (a).) "If the judge finds by clear and convincing evidence that the respondent engaged in unlawful violence or made a credible threat of violence, an order shall issue prohibiting further unlawful violence or threats of violence." (§ 527.8, subd. (j).)

A '"[c]redible threat of violence"' is "a knowing and willful statement or course of conduct that would place a reasonable person in fear for his or her safety, or the safety of his or her immediate family, and that serves no legitimate purpose." (§ 527.8, subd. (b)(2).) A '"[c]ourse of conduct"' is "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including . . . making telephone calls to an employee; or sending correspondence to an employee by any means . . . ." (§ 527.8, subd. (b)(1).)

The record contains substantial evidence to support the court's issuance of the restraining orders. Elder "screamed" at M.S. during their initial phone call and continued to contact her after she asked him to stop. He did not stop. Instead, he repeatedly contacted her months after his contract had been terminated; his last text message said he was reading the obituary column every day waiting to see her name, which the trial court reasonably construed as an implied threat.

Along the same line, Elder's first call to D.B was profane and his second call ended with him threatening to sexually assault both D.B. and D.B.'s wife. The escalating nature of the contacts, and the statements themselves, might well cause a reasonable person to become afraid. This is particularly true where an object like the one Elder threatened to use to commit the assault was found in a Tesoro employee's trailer.

4

Despite Elder's testimony to the contrary, there was no conceivable legitimate purpose for the language he used.

Elder also argues the restraining orders are improper because he has not "met, seen, or communicated in person" with M.S. or D.B. Such face to face contact is not required. Section 527.8 specifically provides for the issuance of a restraining order based on "making telephone calls to an employee; or sending correspondence to an employee by any means . . . ." (§ 527.8, subd. (b)(1).)

Finally, Elder argues the protective order is improper because "[M.S.] no longer works for [Tesoro]." However, the only evidence presented during the hearing was that M.S. still worked for Tesoro. And, under section 527.8, subdivision (a), M.S. had only to be an employee of Tesoro at the time it sought the protective order.

## DISPOSITION

The judgment is affirmed. Tesoro is to recover its costs on appeal

GOETHALS, J.

WE CONCUR:

ARONSON, ACTING P. J.

FYBEL, J.

5